JOHN F. MORRIS ET AL. v. JOHN B. EDDINS ET AL.

Delivered January 8, 1898.

1. **Will—Creation of Life Estate.**

Where a will provides for the purchase of land for the benefit of M. "during his life, and at his death to be the property of any child or children surviving him, and in case he dies without children, then to be divided among" certain other designated beneficiaries, this creates in M. only a life estate.

2. **Same—Deed Held to Convey Only Life Estate.**

Where, in pursuance of a will devising a life estate in land to be purchased by the executors, land was bought and conveyed to the beneficiary by warranty deed in usual form, except that it expressly stipulated that it was made under and in pursuance of the will, the deed vested only a life estate in the grantee.

3. **Same.**

A special warranty deed by a life tenant holding under a deed which on its face discloses that his interest is a life estate, conveys only an estate limited by the life of the grantor.

4. **Limitation Against Remainderman.**

Limitations in favor of grantees of the life tenant in possession of the land will not begin to run against the remainderman until such life tenant's death, as the remainderman has no cause of action until then.

APPEAL from Camp. Tried below before Hon. J. M. TALBOT.

*Morris & Crow,* for appellants.

*M. M. Smith, Sheppard & Jones,* and *John B. Eddins,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—This suit was filed by appellants on the 20th day of April, 1896, to recover of appellees 295 1-2 acres of land lying in Camp County. The defenses were the general issue and the three, five, and ten years statutes of limitation. The cause was tried May 22, 1897, by the court without a jury, and judgment was rendered for the appellees, to reverse which this appeal is prosecuted.

The facts as disclosed by the record are as follows:

C. C. Morris, of Atlanta, Georgia, in February, 1880, made and published his last will and testament, in which he provides as follows:

"Item 11. I desire and direct that after the payment of my debts and the annuity given to my beloved wife out of the rents of the city property, that my executors invest in real estate in the State of Texas the sum of forty-five hundred dollars, which lands are to be for the use and benefit of my son, William L. Morris, during his life, and at his death to be the property of any child or children of his born in lawful wedlock

surviving him, and in case he dies without such children, then to be divided among my children and the children of my deceased daughter, Elizabeth Davis."

In item 19 of said will John F. Morris and James A. Defoor are appointed executors of said will, and directed to carry out its provisions, and especially to carry into effect the provisions of said will to raise the sum of money mentioned in item 11 of said will for his son, William L. Morris, as therein mentioned.

These are all the provisions in said will that pertain to W. L. Morris, and he was given no other property and was to have no other benefit under the will.

Soon after the execution of said will C. C. Morris departed this life, and his said will was duly probated and recorded at the July term, 1880, of the Court of the Ordinary of Fulton County, Georgia, being the proper court having juristiction of the probate of wills, and appointing and confirming John F. Morris and James A. Defoor executors thereof. Afterwards a duly certified copy of said will, with the judgment of the said court admitting it to probate, duly certified as required by law, was, on April 4, 1896, filed for record and recorded on the deed of records of Camp County, Texas.

Acting under this will, John F. Morris and James A. Defoor, as executors, purchased from W. D. and H. A. Hess the land in controversy, and caused them to convey it to W. L. Morris on the 15th day of February, 1881. The deed of conveyance is as follows:

*"The State of Texas County of Camp.*—Know all men by these presents, that we, W. D. Hess and Hellen Hess, wife of said W. D. Hess, of the State and county above written, for and in consideration of the sum of seventeen hundred and seventy-three dollars, one thousand dollars cash in hand paid, the other seven hundred and seventy-three dollars to be paid on the 25th day of December, 1881, in a certain promissory note made, executed and delivered by John F. Morris and J. A. Defoor, executors of C. C. Morris, deceased, to the said W. D. Hess for the said sum of seven hundred and seventy-three dollars, payable to the said W. D. Hess or bearer by the 25th day of December, 1881. The receipts of said cash and the said note are hereby acknowledged to us in hand paid by John F. Morris and J. A. Defoor, executors of said C. C. Morris, deceased, of said State and county, have granted, sold, and conveyed, and by these presents do grant, sell, and convey unto the said W. L. Morris, of the State and county aforesaid, all that tract or parcel of land (describing it).

"To have and to hold the above described premises, together with all and singular the rights, members, and appurtenances thereto in any wise belonging, unto the said W. L. Morris, his heirs and assigns, forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said W. L. Morris, his heirs and assigns, against every person whomsoever, lawfully claiming or to claim the same or any part thereof.

"The above deed made with the following restrictions and limitations, to wit:

"Subject to a will made by C. C. Morris, father of W. L. Morris, said will recorded in the State of Georgia, county of Fulton, said will of date of February 13, 1880, with a codicil to said will of date February 18, 1880, said will among other things directing as follows:

" 'I, C. C. Morris, desire and direct that after the payment of my debts and the annuity given to my beloved wife out of rents of the city property, that my executors invest in real estate in the State of Texas the sum of forty-five hundred, which lands are to be for the use and benefit of my son, William L. Morris, during his life, and at his death to be the property of any child or children of his born in lawful wedlock surviving him, and in case he dies without such children, then to be divided among my children and the children of my deceased daughter, Elizabeth Davis.' The above sum of seventeen hundred and seventy-three dollars coming to the said W. L. Morris by and through said will of the said C. C. Morris.

"W. D. HESS.
"H. A. HESS."

This deed was duly recorded in Camp County deed records February 24, 1882.

W. L. Morris, on May 16, 1885, conveyed the land to W. M. Smith, one of the appellees, for the consideration of $500, specially warranting the title as against himself and all persons claiming by, through, or under him. This deed was duly recorded in Camp County, May 23, 1895.

W. M. Smith, on January 9, 1889, conveyed to E. A. King and John B. Eddins an undivided one-half interest in said land, in consideration of legal services rendered him in a suit by S. E. Morris against him to recover the same. The deeds contained covenants of general warranty, and was duly recorded in Camp County January 16, 1889.

On August 23, 1890, W. M. Smith conveyed his remaining undivided half interest in the land to his wife, E. P. Smith, by deed with covenants of general warranty, expressing a consideration of $500, which was duly recorded in Camp County, September 25, 1890.

On January 9, 1892, King conveyed his interest in the land to Eddins.

The executors knew in 1885 that W. L. Morris had sold the land and made the deed to W. M. Smith, and expressed much regret at his act in doing so. S. E. Morris, one of the devisees under the will, also knew of it at that time.

The appellees took exclusive adverse possession of the land at the dates of their respective deeds, and used and cultivated the same and held peaceable, continuous and adverse possession thereof, claiming the same in fee simple under their respective deeds against the world, and they paid all the taxes chargeable against the said land up to the date of the filing of this suit.

The improvements made on the land by appellees are about equal in value to the amount of the rents due appellants.

The consideration paid Hess and wife by the executors for the land was part of the $4500 bequeathed in item 11 of said will.

W. L. Morris died in September, 1895, leaving a wife, but no child or children surviving him. The appellants are the children and grand-children of the testator, C. C. Morris, referred to in item 11 of said will, and are entitled to the land in controversy unless W. L. Morris' deed conveyed the fee simple title to W. M. Smith.

The real questions raised by the assignments of error in this case are, did the deed from Hess and wife to W. L. Morris convey or purport to convey a fee simple title to the land in controversy; and if not, are the appellant barred by limitation?

We do not think that either the will or deed comes under the rule in Shelley's Case. Both by the item 11 of the will and by the deed containing a recital thereof, only a life estate was conferred upon W. L. Morris, and these instruments will bear no other construction. It follows, therefore, that W. L. Morris could only convey to Smith a life estate, that is, an estate during the natural life of said Morris, and at the death of W. L. Morris without children the remainder would vest in appellents.

On the question of limitation we think that the statute did not begin to run against appellants until the death of W. L. Morris, for no estate in this land was cast upon them until then, and of course, until then they had no right of action to recover it from anybody.

We are therefore of opinion that the court below erred in rendering judgment for appellees, and order that said judgment be reversed and here rendered for appellants for the land in controversy, awarding a writ of possession.

*Reversed and rendered.*

Writ of error refused.